UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SEAN ROGERS,

               Plaintiff,                             Hon. Gordon J. Quist

v.                                                  Case No. 1:12-CV-1201

AMY BRADLEY, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #34). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **dismissed**.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On October 12, 2010, Plaintiff was "serving lunch in food service" when Food Service Supervisor Broomfield instructed Plaintiff to "use the larger size ladle." Shortly thereafter, Plaintiff was instructed by Food Service Supervisor Bradley "to use a smaller size ladle." When Plaintiff asked "exactly which size ladle" he should use, Bradley told Plaintiff he was "a stupid asshole" and Broomfield told Plaintiff that he was a "retarded son of a bitch." Plaintiff told Bradley that he was using the larger ladle because he was instructed to do so by Broomfield, to which Bradley instructed Plaintiff to "get your stupid ass away from me." Plaintiff asked Bradley to "not talk to me like that" and further informed Bradley that if she

continued to "use that type of language," he would file a grievance against her.  Bradley then stated to Plaintiff, "I don't give a fuck what you're going to do.  I can say what I want to you."  Bradley later stated to Plaintiff, "if you write a grievance against me, I will write you a bad work report and I will continue to write them against you until you're fired, you dumb ass."

On October 17, 2010, Plaintiff was performing his food service duties when Food Service Supervisor Bradley began "berating and belittling" another prisoner "with vulgar profanity."  Bradley "attempted to persuade" Plaintiff to join her in this conduct.  When Plaintiff declined, Bradley called Plaintiff a "dumb fuck" and a "dumb asshole."  Plaintiff responded by threatening to write a grievance against Bradley who responded by using even more profanity and sending Plaintiff back to his cell.  The following day, Bradley stated to Plaintiff, "I'm not afraid of grievances written on me, because I'll say something to somebody that I know here at DRF, and get you rode out or get one of the staff to say you did something to them and get you sent to segregation."  Plaintiff replied to Bradley that he would file a grievance against her after which Bradley instructed Plaintiff to return to his cell.

On October 20, 2010, Plaintiff was preparing to go to food services for his scheduled work shift when he was informed that "Bradley just called and said they don't need you anymore."  Later that morning, when Plaintiff went to breakfast, he approached Bradley and asked, "wasn't I supposed to work in food service today?"  Bradley responded, "yes, you were scheduled to work, but I felt like laying you in again."  When Plaintiff asked why she took this action, Bradley stated, "because I really hate rat motherfuckers who write grievances against me.  I told you I was going to keep laying you in until you get fired."  Bradley also threatened to get "somebody" to write Plaintiff a "major ticket."  Plaintiff asked Bradley if she was acting this way because Plaintiff wrote grievances against her and also testified against her in a different prisoner matter, to which Bradley stated, "yes."  From October 24,

2010, through October 26, 2010, Bradley, and on one occasion Food Service Supervisor Burgtorf, instructed Plaintiff not to report to work in food service.

On October 26, 2010, Corrections Officers Edington and Miller "singled the plaintiff out for a shakedown." Edington stated to Plaintiff, "I hear you're causing a problem for the food service supervisors. They tell me you like to write grievances." Edington later told Plaintiff, "I'll show you who wins around here at DRF." Plaintiff responded by informing Edington and Miller that he would write grievances against them for threatening and retaliatory behavior. Edington later charged Plaintiff with a fraudulent misconduct violation.

On October 27, 2010, Plaintiff was again informed that Food Service Supervisor Bradley had ordered him not to work that day. Plaintiff was later found guilty of the fraudulent misconduct charge asserted by Corrections Officer Edington. As a result of this conviction, Plaintiff was prevented from working in food service from October 31, 2010, through November 2, 2010.

Plaintiff informed Classification Director Beecher that Food Service Supervisor Bradley was improperly preventing him from performing his food service work assignment. Beecher failed to rectify the situation and instead acquiesced to Bradley's "retaliation and harassment" of Plaintiff. Food Service Director Koenigsknecht was "placed on notice" regarding the actions of Food Service Supervisors Bradley, Broomfield, and Burgtorf, but "failed to take disciplinary action [against them] or otherwise control their behavior." Koenigsknecht "indirectly, acquiesced with, approved, tacitly authorized, condoned or ratified the unlawful and unconstitutional conduct of [Food Service Supervisor] Bradley."

Plaintiff initiated the present action on November 1, 2012, against: (1) Food Service Supervisors Bradley, Broomfield, and Burgtorf; (2) Corrections Officers Edington and Miller; (3) Food

Service Director Koenigsknecht; (4) Classification Director Beecher; and (5) Grievance Coordinator Duncan.  Plaintiff alleges that Defendants Bradley, Broomfield, Burgtorf, Edington, and Beecher subjected him to unlawful retaliation in violation of both state and federal law.  Plaintiff alleges that Defendants Bradley, Broomfield, Burgtorf, Edington, Koenigsknecht, Beecher, and Duncan engaged in various conspiracies the purposes of which were to subject Plaintiff to unlawful retaliation.  Plaintiff alleges that Defendants Bradley, Broomfield, Miller, and Duncan subjected him to intentional infliction of emotional distress in violation of Michigan law.  Plaintiff asserts that Defendant Koenigsknecht violated his rights by failing to "control" Defendants Bradley and Broomfield.  Plaintiff also alleges that Defendants' various unlawful actions constitute "professional negligence."  Plaintiff requests injunctive relief and monetary relief in excess of $400,000.  Defendants now move for summary judgment, on both substantive and exhaustion grounds, as well as for qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398

F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the

nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view

the evidence in the light most favorable to the non-moving party, the party opposing the summary

judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a

genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary

judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## QUALIFIED IMMUNITY STANDARD

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation.  *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).  As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.*  Generally,

when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he

engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

## ANALYSIS

### I.       Exhaustion

Defendants Burgtorf, Duncan, and Koenigsknecht assert that they are entitled to relief because Plaintiff failed to properly exhaust the claims asserted against them.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's

deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of their motion for summary judgment, Defendants assert that between the dates of October 12, 2010, and November 2, 2010, Plaintiff filed 12 grievances. Plaintiff does not dispute this assertion. Defendants Burgtorf, Duncan, and Koenigsknecht claim that because none of the aforementioned grievances identify them by name, they are entitled to dismissal of the claims against them. The Court only partly agrees.


A.   Defendant Burgtorf

Plaintiff argues that grievance DRF-10-11-02627-28a adequately exhausts his claims against Defendant Burgtorf. Plaintiff filed this grievance on October 28, 2010, alleging, in part, that "(John or Jane Doe) Food Service Supervisor worked in place of F/S Bradley for 10-25-10 said that Rogers is laid in again." (Dkt. #35, Exhibit J). Plaintiff asserts that because he did not know the name

of the individual in question when he filed the grievance, he referred to the person as "John or Jane Doe." Plaintiff argues that he only later learned that the individual was Defendant Burgtorf. While the grievance did not identify Defendant Burgtorf by name, it clearly indicated that the individual in question was a Food Service Supervisor who substituted for Food Service Supervisor Bradley on October 25, 2010. The Court finds that this description was sufficient to enable prison officials to identify against whom this grievance was asserted. *See, e.g., Christian v. Michigan Department of Corrections - Health Services*, 2013 WL 5348832 at *4-5 (E.D. Mich., Sept. 24, 2013) (the failure to name an individual in a grievance is not fatal if the grievance is "precise enough to permit the MDOC to identify them"). Thus, the Court rejects Defendant's argument that because this grievance did not identify him by name, he is entitled to relief. This conclusion does not terminate the analysis, however, as it must still be determined whether the grievance was pursued through all three steps of the grievance process and whether the grievance concerns any of the claims asserted in the present action.

This particular grievance was rejected as duplicative of grievances DRF-10-10-02557-17b and grievance DRF-10-10-02577-17b. Defendants have submitted duplicate copies of grievance DRF-10-10-02577-17b which indicate that such was pursued through all three steps of the grievance process. (Dkt. #35, Exhibits F-G). Defendants have failed to submit a copy of (or other information regarding) grievance DRF-10-10-02557-17b and, therefore, have failed to establish that this grievance was not pursued through all three steps of the grievance process. The aforementioned rejected grievance (DRF-10-11-02627-28a) was likewise pursued through all three steps of the grievance process. (Dkt. #35, Exhibit J). Thus, the Court finds that the grievance Plaintiff pursued against Defendant Burgtorf was pursued through all three steps of the grievance process. However, while Plaintiff alleges in this grievance that Defendant Burgtorf unlawfully retaliated against him, Plaintiff does not allege that

-12-

Burgtorf engaged in any conspiracy.  Thus, the Court concludes that Plaintiff's conspiracy claim against Defendant Burgtorf must be dismissed for failure to exhaust administrative remedies, but further concludes that Plaintiff's retaliation claim against Burgtorf has been properly exhausted.  As discussed below, however, Plaintiff's retaliation claim against Defendant Burgtorf is subject to dismissal on a separate ground.

B.    Defendants Duncan and Koenigsknecht

Plaintiff has submitted a sworn pleading in which he asserts that as of the date he sought to file a grievance against Defendants Duncan and Koenigsknecht he was on modified grievance access. (Dkt. #43 at ID#277-278).  When a prisoner is on modified grievance access, he cannot file a grievance unless the Grievance Coordinator agrees to provide the prisoner with the appropriate form.  *See* Mich. Dep't of Corr., Policy Directive 03.02.130 at ¶¶ HH-KK.  Plaintiff further asserts that he requested a grievance form so that he could exhaust his claims against Duncan and Koenigsknecht, but that his requests were denied.  (Dkt. #43 at ID#277-278).  Defendants have submitted no evidence to the contrary.  Accordingly, the Court finds that Defendants Duncan and Koenigsknecht have failed to establish that Plaintiff failed to exhaust the claims against them.  *See, e.g., Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-47 (6th Cir., Apr. 1, 2005) (where a prisoner on modified grievance access requests a grievance form, but is denied, such constitutes "the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim").  However, as discussed below, Plaintiff's claims against Defendants Duncan and Koenigsknecht must be dismissed on other grounds.

## II.        Qualified Immunity

Plaintiff alleges that Defendant Burgtorf unlawfully retaliated against him.  Plaintiff alleges that Defendant Duncan subjected him to intentional infliction of emotional distress.  Plaintiff alleges that Defendant Koenigsknecht is liable for damages because he "failed to control" the actions of Defendants Bradley and Broomfield.  Plaintiff also alleges that Defendants Burgtorf, Duncan, and Koenigsknecht (as well as other defendants) engaged in conspiracies against Plaintiff.  Defendants Burgtorf, Duncan, and Koenigsknecht assert that they are entitled to qualified immunity.

### A.        Defendant Burgtorf

#### 1.        Retaliation

Plaintiff alleges that Defendant Burgtorf subjected him to unlawful retaliation.  (Dkt. #1 at ¶ 70).  Plaintiff alleges that on October 25, 2010, Burgtorf instructed him not to report to work in food service.  (Dkt. #1 at ¶ 43).  Plaintiff alleges that Burgtorf undertook this action as retaliation for Plaintiff having previously filed a grievance against Defendant Bradley.  (Dkt. #1 at ¶ 70).  At his deposition, Plaintiff acknowledged that Burgtorf's involvement in this matter was limited to simply informing him, on October 25, 2010, to not report to work.  (Dkt. #35, Exhibit A at 65).

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Accordingly, even if Plaintiff demonstrates that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42. Despite having had an adequate amount of time to conduct discovery, Plaintiff has failed to present evidence (or even allege facts) demonstrating that Burgtorf's actions were in any way related to grievances Plaintiff previously filed against Defendant Bradley. Defendant has established that Plaintiff cannot sustain his burden at trial on this particular claim. The undersigned recommends, therefore, that Defendant Burgtorf's motion for qualified immunity be granted as to this claim.

2.      Conspiracy

Plaintiff alleges that the October 25, 2010 decision by Defendant Burgtorf to suspend him from work for the day was the product of a conspiracy by Defendants Bradley and Burgtorf to unlawfully retaliate against Plaintiff.  (Dkt. #1 at ¶ 70).  Plaintiff alleges that this conspiracy violates federal law, specifically 18 U.S.C. § 241, which provides as follows:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
>
> If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--
>
> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241.

This provision is a criminal statute, however, and as such "do[es] not create a private cause of action."  *Jenkins v. Michigan Department of Corrections*, 2014 WL 1764983 at *5 (W.D. Mich., May 2, 2014).  Plaintiff, as a private citizen, "lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Id.*  Moreover, even if Plaintiff were asserting his conspiracy claims pursuant to different authority, the result would be the same.  To state a claim for conspiracy, Plaintiff "must plead with particularity, as vague and conclusory allegations" do not suffice.  *Jenkins*, 2014 WL 1764983 at *5.  Specifically, Plaintiff must allege the following: (1) the existence or execution

of the alleged conspiracy; (2) overt acts relating to the promotion of the conspiracy; (3) a link between the alleged conspirators; and (4) an agreement by the conspirators to commit an act depriving Plaintiff of a federal right. Accordingly, "vague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Id.*

While Plaintiff alleges that Defendant Burgtorf engaged in an unlawful conspiracy, Plaintiff has presented no evidence that would entitle him to prevail on this claim. As discussed above, Defendant has demonstrated that Plaintiff failed to exhaust this claim. The Court recommends, in the alternative, that because Defendant Burgtorf has established that Plaintiff likewise cannot sustain his burden at trial on this claim, Burgtorf's motion for qualified immunity be granted as to this claim.

B.    Defendant Duncan

Plaintiff alleges that the refusal by Defendant Duncan to provide him with grievance forms when he was on modified grievance access was the product of a conspiracy by Defendants Duncan, Bradley, Broomfield, Burgtorf, Edington, and Miller. (Dkt. #1 at ¶ 77).

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. Liability in a § 1983 action does not, therefore, attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a

grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").

Plaintiff has failed to submit evidence that Defendant Duncan did anything more than deny his grievances. Such is an insufficient basis to assert a § 1983 claim for conspiracy. Moreover, as discussed immediately above, Plaintiff's conspiracy claims are not cognizable. Likewise, Plaintiff has presented no evidence that would entitle him to prevail on this claim. Accordingly, the undersigned recommends that Defendant Duncan's motion for qualified immunity be granted as to Plaintiff's conspiracy claim.[1]

C.     Defendant Koenigsknecht

1.     Failure to Control

Plaintiff alleges that Defendant Koenigsknecht is liable for damages because he "failed to control" the actions of Defendants Bradley and Broomfield. (Dkt. #1 at ¶ 73). As noted above, however, liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. Plaintiff has presented no evidence that Koenigsknecht actively participated in the incidents in question. Instead, Plaintiff's claim is based on nothing more than the allegation that Koenigsknecht supervises Defendants Bradley and Broomfield. Accordingly, the undersigned recommends that Defendant Koenigsknecht's motion for qualified immunity be granted as to this particular claim.

---

[1] Plaintiff also alleges against Defendant Duncan a state law claim for intentional infliction of emotional distress which is addressed in Section V below.

2.      Conspiracy

Plaintiff alleges that Defendant Koenigsknecht gave him "below average" work evaluations.  Plaintiff alleges that the decision to rate his performance so low, was the result of a conspiracy by Defendants Bradley, Beecher, and Koenigsknecht to retaliate against Plaintiff.  (Dkt. #1 at ¶¶ 65, 74).  As previously noted, Plaintiff's conspiracy claims are not cognizable.  Moreover, Plaintiff has presented no evidence that would entitle him to prevail on this claim.  Accordingly, the undersigned recommends that Defendant Koenigsknecht's motion for qualified immunity be granted as to this claim.

**III.      Conspiracy**

In addition to the conspiracy claims discussed above, Plaintiff asserts various additional claims that Defendants conspired to violate his rights.  Specifically, Plaintiff asserts that the decision by Defendant Bradley to give him "below average" work evaluations was the result of a conspiracy by Defendants Bradley, Beecher, and Koenigsknecht to unlawfully retaliate against him.  (Dkt. #1 at ¶¶ 65, 74).  Plaintiff alleges that Defendant Edington subjected him to a retaliatory "shakedown" and later charged him with a fraudulent misconduct violation as part of a conspiracy by Edington and Defendants Bradley, and Broomfield to retaliate against him.  (Dkt. #1 at ¶ 71).  Finally, Plaintiff alleges that the decision by Defendant Beecher to terminate him from his food services job was the product of a conspiracy by Defendants Beecher, Bradley, and Broomfield.  (Dkt. #1 at ¶ 75).

As discussed above, Plaintiff's conspiracy claims are not cognizable.  Furthermore, even if Plaintiff's claims were cognizable in this action, Plaintiff has failed to present evidence that would entitle him to prevail on such.  Instead, Plaintiff's conspiracy claims rely on nothing more than vague

and conclusory assertions. Accordingly, the undersigned recommends that Defendants Bradley, Broomfield, Edington, and Beecher be granted summary judgment as to Plaintiff's conspiracy claims.

IV.       **Motion for Summary Judgment**

   A.      Defendant Edington

Plaintiff alleges that Defendant Edington falsely charged him with a misconduct violation for "disobeying a direct order" as retaliation for previously writing grievances against Defendants Bradley and Broomfield. (Dkt. #1 at ¶¶ 45-52, 71; Dkt. #43 at ID#284). Defendant Edington asserts that he is entitled to summary judgment. The Court agrees.

As previously observed, the causation element of a retaliation claim is analyzed under the familiar burden-shifting framework. Thus, even if Plaintiff presents evidence that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." Furthermore, where an inmate alleges that a prison official falsely charged him with a misconduct violation for retaliatory purposes, the prison official is entitled to relief if the prisoner was found guilty of the misconduct violation. *See, e.g., Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir., Nov. 17, 2005) (where prisoner is found guilty of the allegedly retaliatory misconduct violation, such "essentially checkmates a retaliation claim"). Implicit in this conclusion is that a finding that the allegedly retaliatory misconduct charge was supported by the evidence constitutes sufficient evidence on the issue of causation to warrant summary judgment for the prison official.

Defendant Edington has submitted the results of the major misconduct hearing concerning the charge that Plaintiff disobeyed a direct order. (Dkt. #35, Exhibit D). Following a hearing, the

Hearing Officer concluded that the order in question was "valid" and that Plaintiff disregarded such. Accordingly, Plaintiff was found guilty of the misconduct violation.  Defendant Edington is entitled to summary judgment for several reasons.

Plaintiff has failed to present evidence establishing a chronology of events from which retaliation can plausibly be inferred.  Plaintiff has likewise failed to present evidence that Edington's actions were undertaken in retaliation for having previously filed grievances against different individuals.  Moreover, as previously noted, Plaintiff was found guilty of the allegedly retaliatory misconduct violation which precludes the present claim.  The undersigned recommends, therefore, that Defendant Edington's motion for summary judgment be granted as to Plaintiff's retaliation claim. Furthermore, to the extent that Plaintiff argues that Defendant is not entitled to summary judgment because he has allegedly engaged in selective enforcement of the prison rules in question, the Court is not persuaded.

The Court recognizes that the Sixth Circuit has *suggested* that the general rule articulated above (i.e., that a guilty finding on a misconduct charge precludes a retaliation claim concerning the issuance of such) might be overcome if the prisoner introduces evidence that the prison official in question engaged in selective enforcement of the relevant prison rules and regulations.  *See Eby*, 481 F.3d at 442.  Specifically, the *Eby* court observed as follows:

> According to MDOC, Thomas cannot show causation without first demonstrating that the misconduct charge was ultimately resolved in his favor, which he cannot do because he was convicted and the conviction was affirmed in the prison's review process.  In other words, MDOC argues that because the administrative process concluded that Eby's allegations were not false, Thomas cannot show a retaliatory motive.  In essence, MDOC's argument imports the favorable-termination requirement of *Heck* into cases where the habeas exception to § 1983 does not apply.

On *summary judgment,* we analyze the causation element of a retaliation claim under the burden-shifting framework announced in *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). After a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity. MDOC cites *Henderson v. Baird,* 29 F.3d 464 (8th Cir.1994), *cert. denied,* 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995), as well as a bevy of our unpublished opinions relying on *Henderson* and *Hynes v. Squillace,* 143 F.3d 653 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998), in support of the proposition that a proven infraction of prison rules will generally satisfy the defendant's burden. Notably, each of these cases was decided on summary judgment, and therefore, each is distinguishable from the present case, which the district court dismissed sua sponte before service of the complaint on the sole defendant, Eby.

However, MDOC cites no case applying the *Mount Healthy* standard on a motion to dismiss, and for good reason - it makes little sense to apply it at the pleading stage. A complaint cannot be dismissed unless "the plaintiff can prove *no set of facts* " that would entitle him to relief. Here, Thomas could establish multiple sets of facts that would prove his § 1983 claim. For example, it is possible that after discovery, Thomas would be able to demonstrate that inmates regularly expose their genitals to guards without consequence. Or perhaps he could prove that he had exposed himself to Eby in the past, but she had never pursued disciplinary action until after he filed a grievance against another guard. In either of these cases, Thomas would be able to show that his filing a grievance was "a motivating factor" behind the misconduct ticket. And Eby likely would be unable to meet her burden to "show that [s]he would have taken the same action in the absence of the protected activity." While it may be unlikely that Thomas could prove such facts, the district court cannot dismiss a pro se prisoner's pleading merely "because the court finds the plaintiff's allegations unlikely." Accordingly, we conclude that Thomas adequately pleaded a claim for retaliation.

*Id.* at 441-42 (internal citations omitted).

For the following reasons, however, the Court is not persuaded by any argument that

Defendant is not entitled to summary judgment on the ground that he selectively enforced the prison rule

in question.  First, the language in *Eby* quoted above is clearly dicta unnecessary to the court's holding and, therefore, is not binding on this Court.

Second, the claims reviewed by the *Eby* court had been dismissed sua sponte by the District Court pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), which requires a court to dismiss any complaint which fails to state a claim upon which relief can be granted.  Defendant Edington is not seeking relief on the ground that Plaintiff has failed to state a claim, but is instead seeking relief pursuant to a properly supported motion for summary judgment.  The *Eby* court did not suggest that summary judgment is precluded whenever evidence of selective enforcement is presented, but instead merely observed that sua sponte dismissal of a retaliation claim is inappropriate if the prisoner *might* be able to present evidence (e.g., evidence of selective enforcement) which, if believed, would entitle him to relief.  As the *Eby* court further recognized, however, even if "a plaintiff shows that his protected conduct was a motivating factor in the defendant's action," the defendant is nonetheless entitled to summary judgment if he shows "that [he] would have taken the same action even without the protected activity."  Defendant Edington has demonstrated that the misconduct charge was valid and issued because of Plaintiff's violation of prison rules.

Finally, adoption of such an argument would require this Court to second-guess hundreds (and perhaps thousands) of decisions made every single day by prison officials in the exercise of their professional judgment, something the United States Supreme Court has long held is an activity for which federal courts are unqualified.  *See, e.g., Bell v. Wolfish*, 468 U.S. 520, 546-47 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

In sum, while Plaintiff has not forfeited all constitutional protections by reason of his conviction and confinement in prison, *Wolfish*, 441 U.S. at 545, he only retains such First Amendment rights as are neither incompatible with his status as a prisoner nor legitimate penological objectives. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Plaintiff enjoys no constitutional right to disobey legitimate prison rules and regulations. Plaintiff was convicted of the misconduct violation in question and Defendant Edington has demonstrated that his actions relative to this misconduct charge were motivated by Plaintiff's violation of prison rules not the filing of grievances against other individuals. Accordingly, the undersigned recommends that Defendant Edington's motion for summary judgment be granted as to Plaintiff's retaliation claim.[2]

B.      Defendants Bradley, Broomfield, and Beecher

Plaintiff alleges that he was terminated from his food services job as retaliation for having previously submitted grievances against Defendants Bradley and Broomfield. (Dkt. #1 at ¶¶ 62-63, 67, 75). As previously discussed, Defendants are entitled to summary judgment if they present evidence that their actions were unrelated to Plaintiff's protected conduct. Defendants have submitted evidence that Plaintiff was terminated from his job due to poor performance rather than any protected activity in which he may have engaged. (Dkt. #35, Exhibits T-V). The undersigned, therefore, recommends that Defendants Bradley, Broomfield, and Beecher be granted summary judgment as to Plaintiff's retaliation claims.

---

[2]   Defendants also assert that Defendant Miller is entitled to summary judgment regarding Plaintiff's retaliation claims on the same ground as Defendant Edington. Plaintiff has failed to allege a claim of retaliation against Defendant Miller. (Dkt. #1 at ¶¶ 62-81). Thus, the Court has disregarded this particular argument.

**V.**          **Plaintiff's State Law Claims**

As previously noted, Plaintiff has asserted various state law claims in this matter. Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction."  Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well."  *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Wojnicz v. Davis*, 2003 WL 21774162 at *3 (6th Cir., July 29, 2003) (same).  Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such without prejudice so that Plaintiff may pursue such in the appropriate state forum.


## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #34), be **granted** as to Plaintiff's federal law claims; Plaintiff's state law claims be dismissed without prejudice;  and this action **dismissed**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  September 12, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge